Good afternoon, Your Honors, and may it please the Court. My name is Ian Shelton of Evershed Sutherland, and I represent Petitioner Kern Oil & Refining Company. As a housekeeping matter, Kern Oil filed a notice withdrawing this morning, withdrawing its CBI designation of the redacted material. Thank you, Your Honor. I'll move on. Kern Oil is a small refinery located in Bakersfield, California. It is a critical part of the economic fabric of that small community, providing jobs and supporting its vendors and suppliers. When Congress passed the SRE program, it recognized that compliance with the Renewable Fuel Standard program can cause disproportionate economic hardship to small refineries, including Kern Oil. So Congress did something about it. It allows small refineries like Kern to petition at any time for an exemption from the RFS for the reason of disproportionate economic hardship, and it requires, mandates EPA to make that decision within 90 days. That did not happen in this case. Here, Kern, EPA granted... Exactly what is it that didn't happen? Within the 90 days, or are you saying something broader? Yes, Your Honor. So it did not happen in the 90 days. That didn't happen within 90 days? Yes, Your Honor. That did not happen in the 90 days. But also... But there was a ruling with regard to the exemption. Yes, Your Honor. So EPA granted a nominal exemption. It said, Kern, you are exempt. However, in granting a remedy, it granted a remedy that only gave a 12% discount. How can you talk about remedy? Because at the time that Kern submitted its application, it had already complied. It didn't need an exemption because it already satisfied the requirement. And where does the statute speak as to what should happen after that? Yes, Your Honor. So EPA has interpreted the program to allow for post-compliance exemptions. It has a policy there. It grants a refund of unexpired RENs. So if a small refinery petition and gets a pre-compliance exemption, it has no compliance costs. It keeps all its RENs. If it carries forward its obligation, it spends no RENs, incurs no compliance costs. Kern's position is that small refineries granted an exemption should not be treated worse if they are granted a post-compliance exemption. And the post-compliance exemption that EPA gives, which is not, you don't get all your RENs back. You only get a refund of unexpired RENs. Where does your position derive from then? Because if they don't define in the statute, specifically if you look at the regs, they don't define exemption or remedy. How is it then that this post-compliance remedy is somehow inconsistent with the text of the statute? Yes, Your Honor. So the statute provides for an exemption. An exemption means an immunity. We're consistent with the EPA on the meanings of these terms. So it means an immunity from having to comply with the statute by only giving... Deprived of that immunity for having to comply with the statute? Pardon me, Your Honor? How was your client deprived of immunity from having to comply with the statute? Because it incurred... Well, it had done something before, but that was its judgment. I'm not sure where the statute points to the affirmative remedy that you say that the EPA is obligated somehow to make your client whole if your client has already chosen to satisfy the requirement through other means. Your Honor, if the statute allows to apply for an exemption at any time... That doesn't mean your client doesn't satisfy the consequences of waiting. But the consequences of waiting, Your Honor, in this case, it turns out that my client received an exemption, but then received a remedy that still made it comply with 88% of its compliance cost. You've already expended that. I mean, the Hawaii Bar gives me an exemption for satisfying the continuing education requirements that other members of the Hawaii Bar have to satisfy. I'm exempt because I'm a federal judge. But if I choose to go to a CLE course and pay for it, I can't turn around and tell the Hawaii Bar, pay me back for that because I'm exempt. So what is it that obligates the EPA to pay back to your client whatever it expended along the way? Our position, Your Honor, is that the program provides for a WRIN credit program that allows EPA to compensate small refineries that have already complied by issuing WRIN replacement orders, just like they did for Sinclair and Hawley Frontier, to offset the cost of compliance. By enacting a policy that says we will refund unexpired WRINs, EPA has acknowledged that you are entitled to a remedy if you get a post-compliance exemption. The issue before this Court is, is the remedy of only refunding unexpired WRINs, is that consistent with the statute? And Kern's position is that it is not. And I want to focus on two of the... But Kern's position is based on taking the term exemption to impose an affirmative obligation on EPA. And if you're relying upon the language of the statute, that puts an awful lot of weight on that word exemption. Where is generally the word exemption taking to impose an affirmative obligation, in this case on EPA, to make whole your client who didn't apply for the exemption to begin with until after it had already satisfied the obligation? Put it this way, Your Honor, if there is a... The government charges a $100 toll to go over the bridge. You pay the toll. The government then says you're exempt. You're exempt from that toll. And then the government says we're going to give you a refund, but it's only going to be $12. That's not an exemption. But we're getting back the $12. I'm not sure where the statute requires them to give you back $100. What it requires, Your Honor, is that the exemption is that... EPA has elected to provide a post-compliance remedy, so it needs to provide one that's consistent with the statute. Stop right there. So now let's go to the statute. You keep talking about this being inconsistent with the statute, but what provision of the statute, in your view, is the remedy that they imposed inconsistent? Right. So our position is that exemption means an immunity. So that means that you are entitled to a refund of all of your RINs. And this is where... Based on what? What turns exemption into immunity into affirmative responsibility to make whole? It's that last step that I've tripped on. The Hawaii Bar doesn't pay me for CLE courses I choose to take. Why does EPA have to pay Kern Oil for obligations that they've already satisfied? EPA is paying Kern Oil nothing. The statute would be meaningless if you apply for a post-compliance exemption and get nothing back or 12 percent back. That would make it to where if you get an exemption, great, it's a piece of paper. It says you're exempt. You still have to pay 88 percent. And it's not EPA giving Kern its own money. It's EPA refunding the RINs that Kern retired to demonstrate compliance. And if I can, Your Honor, if... The choice of which and when lies within Kern's discretion, correct? No, Your Honor. In this case, it did not because EPA violates the deadline, the 90-day statutory deadline. So even if Kern had applied before the exemption deadline, it took EPA 249 days to issue a decision. But that's a different hypothetical of when they would have responded. I realize you have a delay question in terms of potential remedy. But in terms of leading up to it, how to basically schedule or sequence these retirements, that is within your client's discretion, correct? My client can apply for an exemption, but EPA requires three quarters of financial data. This is in the bunker declaration. It states that all the time refineries are not able to get the petition in before the March deadline. And it always takes... It says that mostly they apply late in the year or early in the following year. I'm not sure it says that they can't do it by the compliance deadline. And it's sort of in a posit for your client anyway, which submitted its application after it had already satisfied the obligation. Right, Your Honor. And this is... If Kern Oil is not entitled to a RIN refund order that fully offsets a kid's compliance cost, I want to explain why EPA... Basically, EPA says, well, we'll give them back. We'll give you back your RINs, but only if they are unexpired. And I want to talk about why that unexpired limitation. This court can say, okay, we'll let you do the refund approach. You can give it back, but you need to refund all of the RINs. So Kern Oil retired... It couldn't be true for the 2016 RINs. They'd already expired. And, Your Honor... It expired by the time your client applied. Exactly, Your Honor. But EPA's own regulations allow Kern to use those 4.4 million RINs to comply with its obligation. And so in having a regulation that says you can use these for compliance, but we won't give them back to you if you're entitled to an exemption, that's inconsistent with the purpose of the statute. You're entitled to a refund of all your RINs if you're entitled to an exemption. And we know EPA can do this. EPA stated in the Pruitt action that it is entitled to issue replacement RINs, which would include these 4.4 million 2016 RINs, to provide meaningful relief. And this, Your Honor, is the rub. In talking about exemption, the purpose of the statute is to relieve the economic hardship caused by compliance. So the remedy needs to account for the purpose of the statute. The only way a post-compliance small refinery gets relief is if it gets all its RINs back. And EPA has stated it has a method for doing exactly that by issuing RIN replacement order that will give Kern 4.4 million current vintage year RINs for the 2016s that it got absolutely nothing for. So we know EPA has the ability. So what Kern is asking, if Your Honor does not wish to say that Kern gets a dollar-for-dollar credit for its demonstrated compliance cost, this court can still provide two areas of guidance. If refund is permissible, one, strike the unexpired limitation. That has no basis in the statute. And we know from Pruitt EPA can do better than that. We know that it can provide a remedy that offsets all compliance costs. And two, do it in a timely manner or provide compensation through a RIN replacement order that compensates for the delay. I mean, it's undisputed. EPA completely blew the 90-day deadline and issued a refund on the eve of expiration. These RINs were plummeting in value, 85 percent, and they plummeted 1.6 million in value between October 2018 when EPA should have acted and March 2019 when it ultimately did. We know from Pruitt, I mean, it's a straight violation of the statute. EPA can issue a RIN replacement order under the reasoning of Pruitt that compensates for that radical depreciation of the 2017 RINs it got back on the eve of their expiration. So there are two ways, two guardrails that this court can use to protect small refineries that get a post-compliance exemption. One, it can say the unexpired limitation has no basis in the statute. Give them a Pruitt remedy. And two, do it on time or compensate them for it. Because otherwise you have a situation like my client where it received an exemption, it's a small refinery that's supposed to benefit from it, but in reality it meant practically nothing because the remedy was only worth 12 percent. That's a discount. It's not an exemption. I'll reserve the rest of my time. Thank you, counsel. We'll hear from the government. My name is Daniel Pinkston. I'm an attorney with the U.S. Department of Justice. With me at the counsel table today is Karen Nelson, who's with EPA. As noted by the court, the term exemption is not defined in the statute or the implementing regulations. And EPA has consistently interpreted the term exemption to mean that if a small refinery does qualify for an exemption because it has suffered disproportionate economic hardship, then the consequence is that it is exempted from having to submit RINs to show that it's in compliance with the renewable volume obligations that are imposed under the RFS against other refiners. That's the extent to which exemption goes. It's not providing a remedy of any sort. There is no promise in the statute. In its language, there's no legislative history, and the structure of the statute does not require that EPA provide a small refinery with sufficient RINs of the value that it claims it incurred in its compliance. So something it doesn't require, is it your position that the statute allows EPA to create such a remedy? Well, Your Honor, EPA has consistently over many years determined that if a party obtains an exemption after it complies with the RVO state requirements, then EPA will return the unexpired RINs. In this case, it did return the unexpired 2017 RINs, which were sold by Kern, and as noted, I think, by the court, the 2016 RINs had already expired by the time that Kern actually sought its exemption. They were done four months before Kern submitted its petition for the exemption. But Kern was allowed to use them. Yes, they used them. So what difference the fact of expiration makes? Well, the regulations allow a small refinery or any refinery to use up to 20%. It can use... It's complicated, but why should it matter in terms of the potential benefit to Kerns of having been able to apply RINs, which had not for their purposes expired or were limited by this 20% rule, which is more complicated than I want you to try to state here. Why should that matter in terms of the economic benefit to Kern of qualifying for the exemption? Well, because EPA, its interpretation is, and it's borne out by the language of the statute, is that the only thing you get with an exemption is that you don't have to comply with the requirements of the renewable fuel standards. So in this particular case, Kern was able to use its 2016 RINs, or some portion of them, which then expired. Kern then applied for the exemption. It was granted. And EPA, applying its normal procedure, which has been used in many situations over the past decade, it returned all the unexpired RINs, and the only unexpired RINs were those from 2017. But it's not there because under your scenario, once the exemption is approved, then there's no time deadline on the remedy. Is that right? Well, there is a... EPA is... Well, yes or no, is there a time deadline? Yes. What's that time deadline? Well, EPA is required under the statute and in the regulations to act on a petition within 90 days, and there's no dispute that EPA didn't do that here, but that is the direction. You're missing my point. I'm sorry. I understand the 90 days, but the question is, what about the remedy? Is the remedy completely divorced from acting on the petition? That's right, Your Honor. There's a practice that EPA has adhered to over many years of once the petition is granted, of returning the unretired RINs. That's a practice. It's not... So in that regard, I mean, if you're late and don't comply with the 90 days, that can be to the detriment of the small company that the statute is supposed to help, correct? Well, it could either act to the detriment or it could actually go to the benefit because one of the problems is the volatility of the RIN market. But in this particular case, EPA... So the issue here, it seems to me, is, I mean, if you look in terms of your authority in the producers of renewables case, it was clear that you think EPA thinks it has the statutory authority to unretire RINs. Is that right? Well... Does it have the statutory authority to do that? Well, in the Pruitt case, it was a very specific set of circumstances, and the... Well, I understand each case is its own case, but the question is, is there statutory authority to, in effect, unretire RINs? In the Pruitt case, EPA argued in the context of that very specific set of facts, which is important here, that it did have authority in an informal adjudication to act in the interstitial situation. There was no regulatory or statutory explicit authority to do this, and it did allow the refineries in that situation to obtain new RINs. But EPA has always, always said that that is a very specific situation. That doesn't really help us with the statutory authority question. If EPA decides this is a special case, so we'll say okay here, I'm not sure what prevents EPA from looking at another case and saying, well, this is pretty special too. The statute doesn't seem to speak explicitly to any of this. What the EPA does as its common remedy isn't affirmatively authorized in the statute, and yet nobody seems to be complaining about it. So I'm not sure why it is the EPA is trying to apply statutory handcuffs to its own ability to craft a remedy that seems appropriate to the particular circumstances. EPA's remedy that it has applied so many times over the years is supported by reasoned rationale. Why we do this. I'm really not answering the question. Do you have the statutory authority or not? And in Pruitt you said you did, and here you're basically saying not really. So I don't understand the difference you're drawing between Pruitt and this case. In terms of the pure question of statutory authority. It was stated in Pruitt that there was authority to do what was done in Pruitt. There's no question about that. But your position is there is no such authority here, or it's the discretion of the agency not to invoke the authority? I think it's the discretion of the agency not to invoke that authority, and EPA has consistently said in the decision document in this case and elsewhere that the situation in Pruitt was very different, and I can explain why. One of the reasons is, of course, because in that case, EPA had initially denied the petition. And then over the course of a couple years of litigation, the 10th Circuit said, no, wait a minute, you have to grant the petition. So it went back and did so. Also, and that's a different case from here. We know what's different about Pruitt. What I'm having trouble understanding is what's different about this case. And in particular, I'll go back to what we posed before. Distinguishing between years, in this case 2016 and 2017, and you argue, well, if it's been expired, we won't give it back. But since either 2016 or 2017 RINs had the same value for Kern, what's the difference? What's the rational reason for saying we'll only give back the unexpired year and not the expired year? Why? Well, it's partly because, for example, for the 2010 RINs, as I've indicated, those have, by terms of the regulations, have expired. They are a legal nullity once they expire. And that happened, so you can't give them back. Well, except that you permit the small refinery, in this case Kern, to apply them with a 20% limit and so forth. But they're not really unexpired. I mean, they're not really expired because they still have value to Kern. They're expired on the day that they made the compliance demonstration. So that day they could use them. On March 31, 2018, they could use them, and they did. On April 1, 2018, they were a nullity. That I understand fine, but you're not talking about something that's expired in reality to Kern because the date they used them and the date that EPA made its decision, they still had value to Kern. Well, but Kern had three different ways to comply with the statute, which I think is important. First, it could have sought its exemption before the compliance date. And as EPA mentioned in the decision document, there were 35 petitions granted for 2017. Twenty of those, I think it was 20 or 25, were granted before the compliance date. And because of that, those small refineries did not have to make any compliance. They did not have to retire any RINs. The second thing Kern could have done is to carry forward a RIN deficit, meaning that on the compliance date, they didn't have to retire any RINs on the hope that EPA would then grant an exemption. And if EPA granted the exemption, then Kern wouldn't have to retire any RINs for 2017. If it didn't, Kern would have to retire RINs in the following year. The third thing that a small refinery can do, and it's what Kern did here, was to wait until after the compliance date, comply, file a petition, and then wait until it's granted. If it's denied, then they're no worse off because they've complied already. If it's granted, then they go to what EPA has consistently applied as a remedy here, which makes a lot of sense. But what if it's not granted in 90 days? Well, it has happened, and it happened in this case, but it was granted. This bothers me, and I'll tell you why. Because there is a mandatory requirement in the statute, and I recognize that agencies have a lot of reasons that they can't always meet the deadline. But in not meeting the deadline here, then your earlier answer is, well, I mean, maybe they would have gone up instead of down or this or that. Well, that's really not an answer to what do you do if you bust the 90-day deadline. And so the question is, shouldn't there be a remedy that fits the timing of when the petition is granted? Well, I think you have to look at the particular cases. I am looking at this case right now. I don't know any other cases except the published cases. I understand, Your Honor. But my point here is that EPA did miss the 90-day deadline, but Kern was returned all of its 2017 RINs, all of them, and it sold them or sold some portion of them. It sold them at, we are told, a fraction of the price they could have received if the EPA's action had been timely. That's the allegation. I don't dispute it. Well, if that's possibly true, why shouldn't that be a subject of remand to calculate whether that was true or not, and if so, what the additional loss was? Well, I think the reason you have to go back to the basic premise that the exemption does not require that the small refinery be made whole. Because it's EPA that has adopted this practice of returning RINs. That's EPA's practice. If EPA had adhered to the 90-day deadline, then presumably RINs would have been returned to Kern that had greater value than they are alleged to have had at the time they actually were returned. That's a loss having nothing to do with EPA's policy. It has a loss having everything to do with the delay in EPA's response. Why isn't that a factor to be considered? Well, Your Honor, I think that it's not the case that, at least it's our position, it's not the case that the court should be able to create what's essentially almost a damages remedy for a delay in compliance. It is practice to return the RINs. We're not making this up. We're not imposing this in EPA. You came in and told us that was EPA's affirmative policy. It's judgment, and it's a judgment I think it has the power to impose. But having decided to follow what you've described as a consistent policy across the board, I'm not sure we shouldn't say EPA is required to adhere to its consistent policy. It did adhere to its consistent policy of returning RINs. That is definitely the case. Regarding what's happened to the value of the RINs because of the 140-some day delay. I don't think that's relevant in this case, Your Honor. In your view, so long as there is a decision, it doesn't matter what the remedy would be. What if the decision were delayed two years? Or five. Five. Or ten. Or a year and a half. I mean, the position you're suggesting is that there's no consequence to missing the 90-day deadline. And market-wise, they just happen to fall on the downside. But maybe they would have been on the upside. But that still doesn't account for, well, what is EPA's statutory requirement? So if I'm hearing you, you're saying that the remedy or the timing doesn't really matter. Well, the 90-day deadline goes to when you act on the petition. What if you didn't act on the petition for a year, two years, five years? What are the consequences, in your view, for failing to meet the 90-day deadline? I think the answer you're giving today is no. There are no consequences. Well, I don't think there's a remedy to be created in a situation like this where maybe there is that possibility, but that did not happen here. When you say it didn't happen here, the ultimate determination on the petition far exceeded 90 days, correct? Yes, it did. Okay. So it did happen here. Maybe it's not as extreme as two years, five years, ten years, but it did happen. And then the question is, what are the consequences of that? And I guess your answer, if I understand it right, is there's none. I mean, am I missing your position? Well, I think if EPA had delayed past the date when the 2017 RINs expired, then I don't think there is still a remedy there. I think that in our case, I understand the court is asking hypothetical or an extension of the ultimate position. Well, in the first place, EPA has no statutory or regulatory requirement to return RINs at all, ever. But they've chosen to do so. So how can we go into a twilight zone of imagining that EPA is not doing it when we know that it is? Well, part of the problem here, too, the other issue is that Kern says, don't just give us back the number of RINs that we retired. Kern says, give us back some other number of RINs that will compensate us for our costs of complying and making the compliance demonstration. So it's not just give us back the same number of RINs. Now, I don't know that solves the problem you're talking about here. Wasn't it more logical to say that the 90-day deadline has some consequences and you should calculate it based on that date and not some future date? But if the practice is to return the RINs, that did happen. That did happen in this case. They got all the 2017 RINs back. But at a date when the value of those RINs alleged to have been substantially less, and it doesn't strike me as an implausible allegation, given that you would expect the value to decline as the magic disappearance date gets near. So what's wrong with saying, well, suppose EPA had responded, and I didn't calculate what the date would have been, would have responded on November 1st? Wouldn't it be hard, I presume, to calculate what the value would have been on November 1st and make that the remedy? Well, I think, Your Honor, there are a couple things here. One is the premise of, I think, the question is, should Kern be granted RINs of a value that are equivalent to what it retired on the compliance date? We dispute that, and we've never acted that way in returning RINs. We return the same number of RINs, the retired RINs. But maybe that begs the question of, why shouldn't this go back to the agency to consider? Maybe their position is unreasonable, given the timing, the market, et cetera. Why shouldn't it go back to the agency to consider, okay, deadline missed. What is the consequence of that? Well, because under being consistent with what EPA has done over these years, it did exactly that. Now, I understand there is the issue of what if it was after. Every single one of those, did they do it on time? Did they do it within the 90 days? You probably can't tell me that. Many have not been on time. But if it's on time, well, then the chips fall where they may, correct? Your basic argument is that their only remedy is a mandamus action to force you to act within 90 days, right? Well, I guess they could probably file either an unreasonable delay claim in the district court conceivably, or they could file a mandatory duty claim if we didn't do it within the 90 days. That's a possibility. In the district court, would it be in the claims court? Would it be a money damages remedy? Well, but that's… Anywhere but here. No, I don't think it would be. It's not a money damages. There's nothing in the statute that provides for money damages.  I think our questions have taken you over time, and I think we have your argument in hand. Thank you very much. Your Honor, in rebuttal, there has to be a consequence for EPA violating a mandatory statutory deadline in the statute. That is just as egregious as anything that happened in Pruitt. Kearns should have got those 18.8 million 2017 RINs in October of 2018. It didn't get them until March of 2019, two weeks before the expiration date, and they plummeted in value another 1.6 million before those times. This matter should be remanded to EPA to provide compensation for the damage caused by their delay, and they can issue a RIN replacement order to address that exact issue. Counsel stated that if EPA had waited two more weeks after the 2017s expired, then Kearns would get no remedy at all. It would get no remedy at all, and that just highlights the absurdity of having the unexpired limitation coupled with no consequence for violation of the 90-day deadline. If they can blow the 90-day deadline and you only get back unexpired RINs, that means all EPA has to do is sit two years on a petition, and you'll get nothing for it. That cannot be what happens, and that's why remand is necessary. On the unexpired point, there needs to be a remand to address the harm caused by violation of the 90-day deadline. On the unexpired point, I just want to point to something. It's inconsistent with the statute for this reason. The statute says you can apply for an exemption at any time, but if EPA imposes a requirement that you only get back your unexpired RINs, that effectively puts a two-year deadline on applying because after you make your compliance demonstration, the RINs you retired expired in two years. Therefore, if you petition more than two years out, even though the statute says at any time, you get nothing. Isn't that in the company's control, the timing of the petition? The timing of the petition is in the company's control. It is. But the unexpired limitation when coupled with allowing EPA to violate the mandatory statutory deadline, it gives EPA the ability to strip any remedy, and it's inconsistent with their policy of giving you something back. It gives them an out. We already know that EPA has now interpreted the program such that no small refinery can ever prove disproportionate economic hardship. This is their new position. So they are trying to take any course that they can take, even after granting Kern an exemption, to deprive it of any remedy. Well, that may be a policy argument against the statute, but it doesn't seem to me to speak much to this situation. I heard their argument. I'm not persuaded, but I am concerned about why it is that Kern shouldn't suffer consequences because it decided to take advantage at any time. I can put an application at any time, but that doesn't mean I'm immune from consequences if I took my sweet time about turning it in. So if Kern has control over its application date, at least to the point where it has the data it needs to submit to show it's a small refinery for whom this should be provided, why is that anybody else's responsibility other than Kern? So, Your Honor, I think for the 90-day deadline, there should be a remedy because there was no discretion there. On this point about the unexpired... Your Honor, I'm focusing on the other part. Yes, on the other part, on the unexpired part, EPA's own reg says you can use about-to-expire RINs for 20% of your RVO, and that's what Kern did. And the statute states you can use those RINs to demonstrate compliance. So to say that you can use them for compliance, but you can't use them for the remedy, that inconsistency makes the regulation absurd because no small refinery would ever avail themselves of that option because they can't trust that EPA would actually issue a decision and give them those RINs back. I mean, it renders it almost a nullity. Are there any further questions, Your Honor? I think we have your argument at hand. Thank you. Thank you both for your arguments and your briefing. Very helpful to the Court. And the matter just argued will be submitted for decision.
judges: THOMAS, McKEOWN, CLIFTON